Honorable Bob Armstrong General Land Office Austin, Texas 78701
Re: Whether the School Land Board may trade for land pursuant to article 5421c-13 V.T.C.S., and retain leasing rights.
Dear Mr. Armstrong:
You have requested our opinion regarding the authority of the School Land Board to retain leasing rights in lands traded pursuant to article 5421c-13, V.T.C.S. That statute provides, in section 1(a):
 The School Land Board in conjunction with the General Land Office is authorized to trade fee and lesser interests in Public Free School Fund Lands for fee and lesser interests in lands not dedicated to the Public Free School Fund upon a decision by the School Land Board and the Commissioner of the General Land Office that such trade or trades are in the best public interest of the People of Texas. Such trade or trades may be made either for the purpose of aggregating sufficient acreage of contiguous lands to create a manageable unit; for acquiring lands having unique biological, geological, cultural, or recreational value; or to create a buffer zone for the enhancement of already existing public land, facilities, or amenities. Such trades shall be on an appraised value basis (such appraisal to be made by appraisers of the General Land Office and concurred in by the School Land Board, and such appraisal shall be conclusive proof of the value of the land). The trades shall be for land of at least equal value. The State of Texas shall retain the subsurface mineral rights to oil and gas wherever practical and in all events when there is oil and gas production within fifty (50) miles of such State land. Such trades shall be by a deed to be signed jointly by the Commissioner of the General Land Office and the Governor. Failure of the Governor to sign such a deed constitutes his veto of the proposed trade, and the proposed trade shall not be made.
You ask whether the statute's directive that the state `retain subsurface mineral rights to oil and gas' includes a reservation of leasing rights.
Article 5367, et seq., V.T.C.S., the so-called `Relinquishment Act,' enacted in 1919, conveys to the surface owner of all public free school lands as an agent of the state `an undivided fifteen-sixteenths of all oil and gas which has been undeveloped and the value of the same' on all such lands. Greene v. Robison,8 S.W.2d 655 (Tex. 1928). Its purpose was `to connect the surface owner more closely and less unprofitably with the development of the minerals.' Norman v. Giles, 219 S.W.2d 678, 681 (Tex. 1949). The surface owner is authorized to sell or lease the oil and gas found thereon. V.T.C.S. art. 5368.
Article 5421c-13, Section 4, however, which was enacted in 1973, provides that `[a]ll other laws or parts of laws in conflict with this Act are repealed to the extent of the conflict.' In our opinion, when the circumstances of article 5421c-13 are applicable, that statute, by requiring the state's retention of subsurface mineral rights, must be deemed to prevail over the Relinquishment Act in the event of any conflict. Accordingly, it is our opinion that the reservation to the State of Texas of subsurface mineral rights in lands traded pursuant to article 5421c-13 includes a reservation of leasing rights.
 SUMMARY
Article 5421c-13, V.T.C.S., prevails over conflicting provisions of the Relinquishment Act, article 5367, et seq., V.T.C.S., and as a result, the reservation to the State of Texas of subsurface mineral rights to oil and gas traded pursuant to article 5421c-13 includes a reservation of leasing rights.
Very truly yours,
John L. Hill Attorney General of Texas
Approved:
David M. Kendall First Assistant
C. Robert Heath Chairman Opinion Committee